CASE 54.—ACTION BY F. F. LOVELACE AGAINST C. B. LOVE-
      LACE AND OTHERS.—January 25, 1910.

## Lovelace v. Lovelace

Appeal from Wayne Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for part of defendants, plaintiff appeals.
—Reversed.

1.  Bills and Notes—Consideration—Antecedent Debt.—An ante-
    cedent debt due the payee was a good consideration for
    the execution of a promissory note for the amount of the
    debt.
2.  Principal and Surety—Discharge of Sureties—Purpose of Ex-
    ecuting Obligation—Creditor's Knowledge.—If the holder of a
    note did not know of misrepresentations by the maker to
    sureties thereon as to the purpose of executing it and took
    it in good faith in payment of an antecedent debt when the
    maker represented to the sureties that it was given for
    another purpose, the sureties would be bound.

KENNEDY & KENNEDY and W. R. CRESS for appellant.

DUNCAN & BELL and WALTER N. FLIPPIN for appellees.

OPINION OF THE COURT BY JUDGE BARKER—Revers-
ing.

The appellant, F. F. Lovelace, was the owner and
holder of an over-due promissory note for $616.10, of
which his brother, C. B. Lovelace, was the maker,
and the appellees Donlouie and C. W. Hurt were sure-
ties. The note not being paid this action was insti-
tuted against the maker and sureties to recover a
judgment for the amount due. The maker, C. B.

Lovelace, allowed judgment to go by default. The sureties filed separate answers, alleging a fraudulent conspiracy between C. B. Lovelace and his brother, F. F. Lovelace, by which to induce them to become sureties on the note in question, in order to pay off an antecedent indebtedness due to F. F. Lovelace by C. B. Lovelace, who was insolvent. The fraud consisted in C. B. Lovelace making false statements to the sureties that he desired them to sign the note for purposes other than the payment of an antecedent debt. One of the sureties, Donlouie, claims it was represented that the maker of the note desired to raise funds to enable him to stock and equip a livery stable in the town of Albany, Clinton county, Ky. To the other, C. W. Hurt, it is alleged that the maker represented that he desired to raise money to make the last payment upon a farm he had purchased. Both parties allege that they would not have become sureties for C. B. Lovelace in order to enable him to pay an antecedent debt to his brother. The plaintiff denied all the material allegations of the answers, and a trial resulted in a judgment in favor of the sureties.

As to the question of the evidence adduced upon the trial, it may be dismissed by saying that there was testimony tending to establish both sides of the issues between the parties litigant; and this brings us to the question of the correctness of the legal principles laid down by the trial judge in the instructions given to the jury.

Instruction No. 1, given by the court, is as follows: "You will find for the plaintiff, F. F. Lovelace, in this case unless you shall believe from the evidence that the note sued on was a pre-existing debt due from C. B. Lovelace to the plaintiff, F. F. Lovelace, and further believe from the evidence that at the time

the defendants, Hurt and Donlouie, signed said note as sureties, that they had been made to believe by C. B. Lovelace, and did believe, that said note was being made for the purpose of raising funds for the benefit of C. B. Lovelace for other purposes, and if you believe the latter state of case you will find for them or either of them, although you may further believe from the evidence that F. F. Lovelace was ignorant of the representations made to said defendants by C. B. Lovelace."

This instruction does not correctly state the law governing the issues between the parties to this litigation. The payment of the antecedent debt was a good consideration for a new note, and although C. B. Lovelace may have made false and fraudulent statements to the sureties in order to obtain their signatures, if F. F. Lovelace, the holder, was ignorant of this wrongdoing, and took the note in good faith as a payment for the antecedent debt, then the sureties are liable to him notwithstanding the false statements of C. B. Lovelace. If, however, F. F. Lovelace had notice of the false statements alleged to have been made by C. B. Lovelace, then the diversion of the note from the purpose for which the signatures of the sureties were obtained releases them from liability. Brandt, in his work on Suretyship and Guaranty ([3d Ed.] vol. 1, sec. 130), correctly states the rule governing the question at bar: "When a surety signs a negotiable note with the principal for a particular purpose, and it is diverted from that purpose by the principal, and the party taking it has then knowledge of facts sufficient to charge him with notice of such diversion, the surety is not bound. But if the party taking the note has no such notice, express or implied, and takes the note in good faith and for

value, the surety will be bound to him notwithstanding such diversion.'' Nothing in the cases cited by appellees militates against the doctrine here announced. On the contrary, all the cases expressly recognize the rule that the holder of the note must have actual or implied notice of the diversion in order that the sureties may be released. In Russell v. Ballard, 16 B. Mon. 201, 63 Am. Dec. 526, so much relied on by appellees, it was said: ''If a note be purchased by a party with notice that one of the obligors is a surety merely, and that the sale and purchase will defeat the purpose for which it was executed by him, or will violate any understanding or agreement between him and his principal, then the purchaser will be affected by such notice, and cannot hold the surety liable on the note, or compel him to pay it.'' In that case it was held that the fact that the note was made payable to a bank put the purchaser, Russell, on notice that it was executed for a purpose other than paying an antecedent debt to him; but in none of the cases cited by appellees is the principal laid down that a surety will be released because of a diversion of a note from the purpose for which it was executed, unless the holder had actual or implied notice of the agreement or understanding between the maker and his sureties. In the instant case, the note was on its face payable to the order of F. F. Lovelace, and appeared perfectly regular. There was nothing to warn him of a diversion or any other wrong done the sureties by his taking the note in payment of his debt.

As the court in the case at bar instructed the jury to find for the sureties if there was a wrongful diversion, although the holder may not have had notice of it, the judgment must be reversed; and it is so ordered.